**KING–SEELEY THERMOS CO.,**
Plaintiff-Appellant,

v.

**ALADDIN INDUSTRIES, INCORPORATED, Defendant-Appellee.**

**No. 284, Docket 27965.**

United States Court of Appeals
Second Circuit.

Argued April 22, 1963.

Decided July 11, 1963.

Nims, Martin, Halliday, Whitman & Bonynge, New York City (Walter J. Halliday, Oliver P. Howes, Jr., William H. Buchanan, M. L. Severn, New York City, of counsel), for appellant.

Dugald S. McDougall, Theodore R. Scott, Chicago, Ill., Curtiss K. Thompson, New Haven, Conn., for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

This action by brought by appellant King-Seeley Thermos Co. (King-Seeley) [1] to enjoin the defendant, Aladdin Industries, Incorporated from threatened infringement of eight trademark registrations for the word "Thermos" owned by appellant. Defendant answered, acknowledging its intention to sell its vacuum-insulated containers as "thermos bottles", asserted that the term "thermos" or "thermos bottle" is a generic term in the English language, asked that plaintiff's registrations of its trademark "Thermos" be cancelled and that it be adjudicated that plaintiff have no trademark rights in the word "thermos" on its vacuum bottles. The trial court held that plaintiff's registrations were valid but that the word "thermos" had become "a generic descriptive word in the English language * * * as a synonym for 'vacuum insulated' container." 207 F.Supp. 9.

The facts are set out at great length in the comprehensive and well-reasoned opinion of the district court and will not be detailed here. In that opinion, the court reviewed King-Seeley's corporate history and its use of the trademark "Thermos". He found that from 1907 to 1923, King-Seeley undertook advertising and educational campaigns that tended to make "thermos" a generic term descriptive of the product rather than of its origin. This consequence flowed from the corporation's attempt to popularize "Thermos bottle" as the name of that product without including any of the generic terms then used, such as "Thermos vacuum-insulated bottle". The court found that by 1923 the word "thermos" had acquired firm roots as a descriptive or generic word.

At about 1923, because of the suggestion in an opinion of a district court [2] that "Thermos" might be a descriptive word, King-Seeley adopted the use of

1. The action was instituted by The American Thermos Products Company, a predecessor of apellant. The corporate history of King Seeley Thermos Co. is set out in detail in the district court opinion and will not be repeated here. For convenience, King Seeley will be used in this opinion to designate the appellant and its predecessors.

2. American Thermos Bottle Co. v. W. T. Grant Co., 1 Cir., 279 F. 151 (Mass. 1922).

the word "vacuum" or "vacuum bottle" with the word "Thermos". Although "Thermos" was generally recognized in the trade as a trademark, the corporation did police the trade and notified those using "thermos" in a descriptive sense that it was a trademark. It failed, however, to take affirmative action to seek out generic uses by non-trade publications and protested only those which happened to come to its attention. Between 1923 and the early 1950's the generic use of "thermos" had grown to a marked extent in non-trade publications and by the end of this period there was wide-spread use by the unorganized public of "thermos" as a synonym for "vacuum insulated." The court concluded that King-Seeley had failed to use due diligence to rescue "Thermos" from becoming a descriptive or generic term.

Between 1954 and 1957, plaintiff showed awareness of the widespread generic use of "thermos" and of the need to educate the public to the word's trademark significance. It diversified its products to include those not directly related to containers designed to keep their contents hot or cold. It changed its name from the American Thermos Bottle Company to The American Thermos Products Company and intensified its policing activities of trade and non-trade publications. The court found, however, that the generic use of "thermos" had become so firmly impressed as a part of the everyday language of the American public that plaintiff's extraordinary efforts commencing in the mid-1950's came too late to keep "thermos" from falling into the public domain. The court also held that appellant's trademarks are valid and because there is an appreciable, though minority, segment of the consumer public which knows and recognizes plaintiff's trademarks, it imposed certain restrictions and limitations on the use of the word "thermos" by defendant.

■ We affirm the district court's decision that the major significance of the word "thermos" is generic. No useful purpose would be served by repeating here what is fully documented in the opinion of the court below.

Appellant's primary protest on appeal is directed at the district court's finding that

"The word 'thermos' became a part of the public domain because of the plaintiff's wide dissemination of the word 'thermos' used as a synonym for 'vacuum-insulated' and as an adjectival-noun, 'thermos', through its educational and advertising campaigns and because of the plaintiff's lack of reasonable diligence in asserting and protecting its trademark rights in the word 'Thermos' among the members of the unorganized public, exclusive of those in the trade, from 1907 to the date of this action." 207 F.Supp. at 14.

We are not convinced that the trademark's loss of distinctiveness was the result of some failure on plaintiff's part. Substantial efforts to preserve the trademark significance of the word were made by plaintiff, especially with respect to members of the trade. However, there was little they could do to prevent the public from using "thermos" in a generic rather than a trademark sense. And whether the appropriation by the public was due to highly successful educational and advertising campaigns or to lack of diligence in policing or not is of no consequence; the fact is that the word "thermos" had entered the public domain beyond recall. Even as early as 1910 plaintiff itself asserted that "Thermos had become a household word."

■ Judge Anderson found that although a substantial majority of the public knows and uses the word "thermos", only a small minority of the public knows that this word has trademark significance. He wrote at 207 F.Supp. 21–22:

"The results of the survey [conducted at the behest of the defendant] were that about 75% of adults in the United States who were familiar with containers that keep the contents hot or cold, call such a container a 'thermos'; about 12% of

the adult American public know that 'thermos' has a trade-mark significance, and about 11% use the term 'vacuum bottle'. This is generally corroborative of the court's conclusions drawn from the other evidence, except that such other evidence indicated that a somewhat larger minority than 12% was aware of the trade-mark meaning of 'thermos'; and a somewhat larger minority than 11% used the descriptive term 'vacuum' bottle or other container."

The record amply supports these findings.

Appellant argues that the court below misapplied the doctrine of the Aspirin [3] and Cellophane [4] cases. Its primary contention is that in those cases, there was no generic name, such as vacuum bottle, that was suitable for use by the general public. As a result, to protect the use of the only word that identified the product in the mind of the public would give the owners of the trademark an unfair competitive advantage. The rule of those cases, however, does not rest on this factor. Judge Learned Hand stated the sole issue in Aspirin to be: "What do the buyers understand by the word for whose use the parties are contending? If they understand by it only the kind of goods sold, then, I take it, it makes no difference whatever what efforts the plaintiff has made to get them to understand more." 272 F. at 509. Of course, it is obvious that the fact that there was no suitable descriptive word for either aspirin or cellophane made it difficult, if not impossible, for the original manufacturers to prevent their trademark from becoming generic. But the test is not what is available as an alternative to the public, but what the public's understanding is of the word that it uses. What has happened here is that the public had become accustomed to calling vacuum bottles by the word "thermos". If a buyer walked into a retail store asking for a thermos bottle, meaning any vacuum bottle and not spe-

cifically plaintiff's product, the fact that the appellation "vacuum bottle" was available to him is of no significance. The two terms had become synonymous; in fact, defendant's survey showed that the public was far more inclined to use the word "thermos" to describe a container that keeps its contents hot or cold than the phrase "vacuum bottle".

Appellant asserts that the courts in a number of cases have upheld the continued exclusive use of a dual functioning trademark, which both identifies the class of product as well as its source. See, e. g., Standard Brands v. Smidler, 151 F.2d 34 (2 Cir. 1945) ("V–8"); Walgreen v. Obear-Nester, 113 F.2d 956 (8 Cir.), cert. denied, 311 U.S. 708, 61 S.Ct. 174, 85 L.Ed. 459 (1940) ("Pyrex"); Marks v. Polaroid Corp., 129 F.Supp. 243 (D.Mass. 1955), aff'd 237 F.2d 428 (1 Cir. 1956) ("Polaroid"); Q-Tips v. Johnson & Johnson, 108 F.Supp. 845 (D.N.J. 1952), aff'd 206 F.2d 144 (3 Cir.), cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953) ("Q-Tips"); Keebler Weyl Baking Co. v. J. S. Ivins' Son, 7 F.Supp. 211 (E.D.Pa.1934) ("Club Crackers"); Barnes v. Pierce, 164 F. 213 (S.D.N.Y.1908) ("Argyrol"). As this court recently indicated:

> "a mark is not generic merely because it has *some* significance to the public as an indication of the nature or class of an article. * * * In order to become generic the *principal* significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin."

Feathercombs, Inc. v. Solo Products Corp., 306 F.2d 251, 256 (2 Cir.), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962). But see Marks v. Polaroid Corp., supra, 129 F.Supp. at 270 ("a defendant alleging invalidity of a trademark for genericness must show that to the consuming public as a whole the word has lost all its trademark significance").

---

**3.** Bayer Co. v. United Drug Co., 272 F. 505 (S.D.N.Y.1921).

**4.** DuPont Cellophane Co. v. Waxed Products Co., 85 F.2d 75 (2 Cir. 1936).

Since in this case, the primary significance to the public of the word "thermos" is its indication of the nature and class of an article rather than as an indication of its source, whatever duality of meaning the word still holds for a minority of the public is of little consequence except as a consideration in the framing of a decree. Since the great majority of those members of the public who use the word "thermos" are not aware of any trademark significance, there is not enough dual use to support King-Seeley's claims to monopoly of the word as a trademark.

No doubt, the Aspirin and Cellophane doctrine can be a harsh one for it places a penalty on the manufacturer who has made skillful use of advertising and has popularized his product. See 3 Callman, Unfair Competition and Trademarks 1149–50 (2d ed. 1950). However, King-Seeley has enjoyed a commercial monopoly of the word "thermos" for over fifty years. During that period, despite its efforts to protect the trademark, the public has virtually expropriated it as its own. The word having become part of the public domain, it would be unfair to unduly restrict the right of a competitor of King-Seeley to use the word.

■ The court below, mindful of the fact that some members of the public and a substantial portion of the trade still recognize and use the word "thermos" as a trademark, framed an eminently fair decree designed to afford King-Seeley as much future protection as was possible. The decree provides that defendant must invariably precede the use of the word "thermos" by the possessive of the name "Aladdin"; that the defendant must confine its use of "thermos" to the lower-case "t"; and that it may never use the words "original" or "genuine" in describing its product. See Bayer Co. v. United Drug Co., 272 F. 505 (S.D.N.Y. 1921); DuPont Cellophane Co. v. Waxed Products Co., 85 F.2d 75 (2 Cir. 1936).

In addition, plaintiff is entitled to retain the exclusive right to all of its present forms of the trademark "Thermos" without change. These conditions provide a sound and proper balancing of the competitive disadvantage to defendants arising out of plaintiff's exclusive use of the word "thermos" and the risk that those who recognize "Thermos" as a trademark will be deceived.

■ The courts should be ever alert, as the district court said, "to eliminate confusion and the possibility of deceit." The purchasing public is entitled to know the source of the article it desires to purchase. It is not within our province to speculate whether the dire predictions made by appellant in forceful appellate argument will come to pass. Certain it is that the district court made every endeavor in its judgment to give as much protection to plaintiff as possible. The use by defendant of the now generic word "thermos" was substantially curtailed. Plaintiff's trademark "thermos" was protected in every style of printing except the lower case "thermos" and then the use of the word must be preceded by the possessive of defendant's name "Aladdin" or the possessive of "Aladdin" plus one of defendant's brand names. Any doubt about plaintiff's position in the field is removed by the prohibition against the use by defendant in labeling, advertising or publication of the words "genuine" or "original" in referring to the word "thermos". Furthermore, the district court has given both parties the opportunity to apply to it for such orders and directions as may be warranted in the light of changed circumstances and for the enforcement of compliance or for the punishment of violations. In our opinion the trial court has reached a most equitable solution which gives appropriate consideration to the law and the facts.

Affirmed.