**KING–SEELEY THERMOS CO.,**
**Plaintiff,**

v.

**ALADDIN INDUSTRIES INC.,**
**Defendant.**

**Civ. No. 7320.**

United States District Court,
D. Connecticut.

July 14, 1970.

Memorandum Dec. 30, 1970.

John J. McGrath, Murtha, Cullina & Richter & Pinney, Hartford, Conn., for plaintiff.

Curtis K. Thompson, Thompson, Weir & Barclay, New Haven, Conn., for defendant.

### MEMORANDUM OF DECISION AFTER REMAND FROM COURT OF APPEALS

ANDERSON, Circuit Judge.

On June 26, 1962 this court entered a judgment and an injunction in the above entitled case in favor of the defendant, Aladdin, which had been sued by the plaintiff, Thermos Co., for threatened trade-mark infringement because Aladdin had asserted its right and intention to use in its business the word "thermos" in lower case with reference to the vacuum containers which Aladdin manufactured and sold. The factual and legal issues are fully set forth in the Memorandum of Decision of that date, reported in 207 F.Supp. 9 (D.Conn.1962). The statement and discussion of the terms of the injunction appear on pages 14–15 and 27–28. King-Seeley appealed and the judgment of this court was affirmed, 321 F.2d 577 (2 Cir. 1963). Following further controversy between the parties concerning the effect of the judgment as it related to dealings between them, their customers and the public, the court on December 30, 1963 issued a policing order.[1]

In 1968 Aladdin petitioned the court for a modification of the injunction. The petition was denied on August 16, 1968, 289 F.Supp. 155 (D.Conn.1968). From this denial Aladdin appealed and the Court of Appeals vacated the order of denial and remanded for further consideration in the light of its opinion. 418 F.2d 31 (2 Cir. 1969).

On remand this court received briefs from the parties and heard oral arguments of counsel. No evidence additional to that presented at the initial hearing on the petition was offered by either side.

In its opinion relating to the order denying Aladdin's petition for modification of the injunction, this court relied upon United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); and United States v. United Shoe Machinery Corp., 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968). Both of these cases concerned serious violations of the antimonopoly provisions of the Sherman Act and long histories of wrongdoing in this regard. The Court of Appeals distinguished the present case in its origin and issues and held that the rules of those cases should not be applied, where there was no essential wrong-doing involved, with the same rigor and rigidity as that called for in

1. Appendix.

dealing with gross violations of the anti-trust laws.

The Court of Appeals said:

"[This case] presents rather the need for drawing the line between two kinds of right-doing, King-Seeley's legitimate interest in protecting its trademark insofar as this is valid and Aladdin's equally legitimate interest in being free to sell its products by use of a generic term, and their opposites, attempts by King-Seeley to extend its trademark beyond its legal bounds and efforts by Aladdin to encroach upon the protected area." 418 F.2d at 35.

As all prior opinions in this case have pointed out, King-Seeley and its predecessors had three forms of trade-mark which were before this court in the 1962 trial and which the judgment declared to be valid. They were: the word "thermos" in (1) logotype of graduated capitals, enlarging and then diminishing in size; (2) all capitals of the same size and (3) with an initial capital "T". Aladdin did not attack or question the validity of these trade-marks. In holding that the word "thermos" in lower case was descriptive and generic and in the public domain, this court was of the opinion that, in the interests of avoiding confusion, reasonably strong safeguards should be placed around the trade-marks for the sake of the minority of purchasers who rely on King-Seeley's trademarks in making their purchases of vacuum containers. These were the people on whom deception might be practiced.

For this reason this court, in fashioning its decree and subsequent policing order, prevented Aladdin from making any use of any of King-Seeley's three forms of trade-mark. In other words, no effort whatever was made to draw a line between King-Seeley's "legitimate interest in protecting its trade-mark insofar as [it was] valid and Aladdin's equally legitimate interest in being free to sell its products by use of a generic term and their opposites. * * *" The integrity of the trade-marks, bolstered by the pri-

mary consideration of protection of the public from risk of confusion, were considered to be inviolable in the circumstances of the case, and each of the three marks remained untouched and uninvaded by the limited exercise of the right to generic use by Aladdin. This concept appeared to be supported by *Swift* and *United Shoe Machinery*, and, in consequence, a heavy burden was placed upon the petitioner, Aladdin which, in the first round, it did not meet.

Although at the hearing in August, 1968, on Aladdin's petition for modification of the injunction neither party offered any additional compelling evidence of the size of the minority which was aware of and relied upon the trademarks, or the effect upon that minority of the decision of this court in 1962, which was affirmed by the Court of Appeals on July 11, 1963, it is unrealistic to assume that the situation has remained unchanged since 1962. More than eight years of widespread use of the word "thermos" as a generic term must, to a considerable degree, have brought home to the unorganized public, including the approximately 11% who in 1962 recognized and relied upon King-Seeley's trade-marks, that there were both the trade name use and the generic use.

A majority of the reviewing panel of the Court of Appeals has enunciated the rule that the trial court should draw an equitable line between the respective rights of the parties where their interests overlap and compete; and, where the safeguards placed around the trade-marks are, in the light of experience, shown "seriously and needlessly" to impede Aladdin's exploitation of the generic term, those safeguards may be reduced. Although the majority of the reviewing panel left the actual decision to the discretion of the trial court, it did say, "Although the showing seems sufficient to justify an exercise of discretion in Aladdin's favor, it did not compel this."

On reconsideration and following the "line drawing" approach, above mentioned, this court concludes that the pe-

titioner, Aladdin, is entitled to modifications of the decree and policing order which will, first, afford to it, in its advertising material, trade literature and press releases, the use of the word "thermos" with an initial capital "T" where such initial capitalization is required by the generally accepted and authoritatively approved rules of grammar, and second, eliminate the requirement that the use of lower case "thermos," in its advertising material, trade literature and press releases, be preceded by the possessive of "Aladdin" or by the possessive of "Aladdin" with one of Aladdin's brand names, provided any such use makes clear that it emanates from Aladdin.

The court finds that the prohibition against Aladdin's use of the word "thermos" with an initial capital "T", where correct grammatical use requires it, prevents Aladdin from using the word at the beginning of a sentence or in a direct quotation within a sentence and other similar uses. It also finds that Aladdin cannot, in its trade literature and advertising, use testimonial letters which use the word "thermos" not preceded by "Aladdin's"; that its press releases are likely to be rejected or curtailed because editors seeks to avoid too frequent use of the manufacturer's name; and that Aladdin is also prevented from using the generic term "thermos" to refer to vacuum bottles of all makes. The court, pursuant to the less rigid standard adopted by the Court of Appeals, and in the exercise of its own discretion, concludes that such uses of the word "thermos" by Aladdin in its trade literature, advertising and publicity releases are within the rightful and legitimate scope of the employment of the word "thermos" as a generic term, and that the applicable restraining provisions of the decree and policing order seriously and needlessly impede such exploitation by Aladdin of that generic term. The decree and policing order will, therefore, be amended as hereinafter provided. Such modifications, however, will in no wise be applicable to uses of the word "THERMOS", all in capital letters, or in the logotype of graduated capital letters,

nor will they apply to uses of the word "thermos" on labels of Aladdin's merchandise; and, as to all of the uses mentioned in the preceding clauses, the provisions of the decree of June 26, 1962 and of the policing order of December 30, 1963. will in all respects remain in full force and effect.

THE DECREE

The modifications and amendments are hereby made by direct reference to the terms of the decree as set forth in ¶ 5 of the conclusions of law in the decision in this court of June 26, 1962, reported in 207 F.Supp. 9 at pages 14 and 15. They are as follows:

¶ 5, lines 11 and 12 delete the words, "in its literature, in its advertising and."

¶ 5a, insert after the word "thermos," the words "on its labels."

¶ 5b, insert after the word "thermos," the words "on its labels."

¶ 5d, insert after the word "thermos," the words "on its labels."

¶ 5f, line 9, insert after the word "limitations," the words, "insofar as labelling of its products is concerned."

Insert after ¶ 5g a new and additional sub-paragraph numbered ¶ 5h to read as follows:

"5(h). The defendant, in its advertising, trade literature and publicity releases, may use the word "thermos" with an initial capital "T" wherever such initial capitalization is required by the generally accepted and authoritatively approved rules of grammar. Also in such advertising, trade literature and publicity releases the defendant may use the word "thermos" without preceding it by the possessive of Aladdin or such possessive with the addition of one of defendant's brand names, *provided* that in each case of such use of the word "thermos" the advertising material, trade literature or publicity release clearly and explicitly is identified as emanating from the defendant Aladdin."

## THE POLICING ORDER

The policing order of December 30, 1963 is amended to read as follows:

"All advertising and other promotional literature or publicity issued or published by either party referring to this case shall state that the final decision or judgment contains the following holdings, in the following order:

(1) The word "thermos" is generic and in the public domain as a synonym for 'vacuum-insulated' and as an adjectival-noun meaning a vacuum-insulated container.

(2) Aladdin and its customers may use "thermos" describing their vacuum-insulated products, on labels provided "thermos" is spelled entirely in lower case letters, all of the same size and style of type, and preceded by the possessive form of Aladdin or its customer's name. Aladdin may not in its labels, however, use the words "genuine" or "original" or any other words or phrases synonymous therewith, relating to or referring to the word 'thermos', and may not spell 'thermos' with an initial capital 'T' or set it in type larger than the other names or words appearing in the same phrase, clause or sentence in which it is used. Such use of the word 'thermos' will not infringe any of King-Seeley's United States registered trade-marks.

(3) King-Seeley Thermos Co.'s trade-marks 'Thermos', 'THERMOS' and 'THERMOS' in the well-known logotype form, and its United States Registrations thereof are valid. With the exception of the use of 'thermos' with an initial capital 'T', as provided in ¶ 5(h) of the Decree, King-Seeley Thermos Co. has the exclusive right to the use thereof in the style and forms shown in the registrations.

King-Seeley Thermos Co. may send out policing letters to persons who, it has reasonable cause to believe, are violating its registered trade-mark rights without making any reference directly or indirectly to this case or the judgments rendered therein, provided the policing letter is strictly confined to a notice to the alleged infringer that King-Seeley Thermos Co.'s trade-mark (specifying the particular registered trade-mark) rights are being infringed by a particular described use of the word 'thermos', and requesting that such use be discontinued. King-Seeley Thermos Co. may also send out a policing letter which is composed of such a notice and request, adding thereto a simple reference to the case in the usual form of citations, including the reference to the decision of this court dated July 14, 1970, without discussion or comment. It may also send a policing letter composed of such a notice and request with the addition of such citations of the case and the summary of the holding set forth in ¶ 1, ¶ 2 and ¶ 3 above. King-Seeley Thermos Co. may also send out to persons who, it has reasonable cause to believe, are infringing any of its registered trademarks, policing letters containing such notice and request and discussing the decisions in this case, provided complete copies of the opinion of the United States Court of Appeals for the Second Circuit in this case, 321 F.2d 577, and of the decision of this court of July 14, 1970, are attached to and sent with each such policing letter. The limitations hereinabove set forth relative to policing letters shall not apply to correspondence between plaintiff's counsel and counsel for an alleged infringer.

The parties are enjoined from discussing or referring to the opinions and decisions in this case in their advertising, promotional literature, statements for publication and policing letters except in conformity with the foregoing rulings under penalty of $25,000 for each violation."

It is so ordered.

## APPENDIX

### MEMORANDUM OF DECISION ON MOTION FOR INJUNCTION

Pursuant to the reservation of jurisdiction by this court in ¶ 10 of the final judgment, a hearing has been held on petition by the defendant, at which evidence was presented to show that in advertising and promotional literature and in representations to various media of publicity, references and statements have been made about the holdings of the decisions in this case. The court is satisfied that the plaintiff, to a large extent, and the defendant, to a lesser extent, have in such advertising and promotional literature and other statements, so emphasized the portions of the decisions which were favorable to their own interests and minimized the portions adverse to them that the actual holdings of the decisions have been seriously distorted. This course has been pursued to such a degree that there is not only a likelihood, but practically an assurance, that anyone receiving such representations, whether he is another manufacturer, a jobber, retailer, consumer or member of the unorganized public, would be seriously misled into the very kind of damage the decisions sought to prevent.

To protect the decisions and the public, it is necessary for the court to rule as follows:

All advertising and other promotional literature or publicity issued or published by either party referring to this case shall state that the final decision or judgment contains the following holdings, in the following order:

(1) The word "thermos" is generic and in the public domain as a synonym for "vacuum-insulated" and as an adjectival-noun meaning a vacuum-insulated container.

(2) Aladdin and its customers may use "thermos" in describing their vacuum-insulated products, both on labels and in advertising, provided "thermos" is spelled entirely in lower case letters, all of the same size and style of type, and preceded by the possessive form of Aladdin or its customer's name. Aladdin may not, however, use the words "genuine" or "original" or any other words or phrases synonymous therewith, relating to or referring to the word "thermos", and may not spell "thermos" with an initial capital "T" or set it in type larger than the other names or words appearing in the same phrase, clause or sentence in which it is used. Such use of the word "thermos" will not infringe any of King-Seeley's United States registered trademarks.

(3) King-Seeley Thermos Co.'s trademarks "Thermos", "THERMOS", and "THERMOS" in the well-known logotype form, and its United States Registrations thereof are valid. King-Seeley Thermos Co. has the exclusive right to the use thereof in the style and forms shown in the registrations.

King-Seeley Thermos Co. may send out policing letters to persons who, it has reasonable cause to believe, are violating its registered trade-mark rights without making any reference directly or indirectly to this case or the judgments rendered therein, provided the policing letter is strictly confined to a notice to the alleged infringer that King-Seeley Thermos Co.'s trade-mark (specifying the particular registered trade-mark) rights are being infringed by a particular described use of the word "thermos", and requesting that such use be discontinued. King-Seeley Thermos Co. may also send out a policing letter which is composed of such a notice and request, adding thereto a simple reference to the case in the usual form of a citation without discussion or comment. It may also send a policing letter composed of such a notice and request with the addition of a citation of the case and the summary of the holding set forth in ¶ 1, ¶ 2 and ¶ 3 above. King-Seeley Thermos Co. may also send out to persons who, it has reasonable cause to believe, are infringing any of its registered trade-marks, policing letters containing such notice and request and discussing the decisions in this case, provided a complete copy of the opinion of the United States Court of

**1162**

Appeals for the Second Circuit in this case, 321 F.2d 577, is attached to and sent with each such policing letter. The limitations hereinabove set forth relative to policing letters shall not apply to correspondence between plaintiff's counsel and counsel for an alleged infringer.

The parties are enjoined from discussing or referring to the opinions and decisions in this case in their advertising, promotional literature, statements for publication and policing letters except in conformity with the foregoing rulings under penalty of $25,000 for each violation.

Settle order.