59 CCPA

**MAREMONT CORPORATION,**
Appellant,
v.
**AIR LIFT COMPANY, Appellee.**

**AIR LIFT COMPANY, Appellant,**
v.
**MAREMONT CORPORATION,**
Appellee.

Patent Appeal Nos. 8675, 8676.

United States Court of Customs
and Patent Appeals.
July 27, 1972.

James L. Dooley, Cushman, Darby & Cushman, Washington, D. C., for Maremont Corp., William Bullinger, Washington, D. C., of counsel.

John F. Learman, Learman & McCulloch, Saginaw, Mich., for Air Lift Co.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and CLARK, Justice (Ret.), United States Supreme Court, sitting by designation.

RICH, Acting Chief Judge.

These two appeals are from the single decision of the Patent Office Trademark Trial and Appeal Board, 161 USPQ 493 (1969), sustaining an opposition by Air Lift Company (hereinafter Air Lift) to the application of Maremont Corporation (hereinafter Maremont)[1] to register the word-mark LOAD-CARRIER for load-supporting and damping units for automobiles, automobile trailers, and small trucks.

Air Lift opposed on two grounds: (1) that Maremont's mark so resembles its own mark LOADLIFTER, previously registered for air springs for vehicles,[2] as to be likely, when applied to Maremont's goods, to cause confusion or mistake or to deceive and (2) that LOAD-CARRIER is actually the generic name for the goods sold by the parties under their respective marks.[3] The board sustained Air Lift's opposition on the second ground (descriptiveness) after having indicated that it would not have done so on the first (confusion).

Appeal No. 8675 is the applicant Maremont's appeal from the board's decision, while Appeal No. 8676 is the opposer Air Lift's "appeal" from what the board said in its opinion concerning Air Lift's first ground of opposition. We reverse.

### The Opinion of the Board

■ Concerning the likelihood of confusion issue, the board referred to both parties' marks as "highly suggestive designations" and indicated that, in its view, the third party registrations which Maremont had made of record, plus Air Lift's admissions,[4] established (1) that

---

1. Application serial No. 171,347, filed June 19, 1963, claiming both first use and first use in interstate commerce on May 25, 1963.

2. Registration No. 735,226, claiming first use on May 29, 1959, and first use in interstate commerce on June 5, 1959.

3. It is agreed that the parties' products are directly competitive, although they differ structurally. Apparently they are overload support devices similar, but not identical, in function to ordinary shock absorbers. According to Air Lift's president, generic names for the class of devices including both parties' products include "Helper springs, auxiliary springs, [and] shock absorber springs."

4. These admissions were taken from Air Lift's pleadings in a previous opposition, wherein the owner of the mark LOAD-LEVELER, registered for "combination spring and shock absorber units for automotive vehicles," had opposed the registration of Air Lift's mark involved here. This opposition was settled prior to decision, but Air Lift's pleadings therein are available against it here as evidence of the truth of the assertions contained therein. Bakers Franchise Corp. v. Royal Crown Cola Co., 404 F.2d 985, 56 CCPA 798 (1969) ; see also McCormick, Handbook of the Law of Evidence 512–13 (1954), which makes the point that such admissions are evidentiary only, not judicial. The admissions are, of course, not conclusive, but, as Maremont's counsel predicted in an exchange with Air Lift's counsel during the taking of a deposition, the admissions are "there like a rat which is going to stick in your throat through the entire case."

it was a common practice in the trade to use trademarks comprising the word "LOAD" in combination with another word possessing suggestive connotations similar to, or related to, the second words in the marks of the parties and (2) that purchasers were therefore "conditioned" to "look principally" to the word or words with which the word "LOAD" is coupled. It accordingly held against Air Lift on its first ground.

Concerning the generic-name or descriptiveness issue, the board conceded that the record includes no admissible evidence of any use of the word "LOAD-CARRIER" by anyone in the trade other than Maremont. However, it stated that Maremont had consistently used the word "LOAD-CARRIER" in its advertising in exactly the same manner as it had used the term "shock absorber"—namely, as the common descriptive name for the product on which it was used. After reviewing the examples of such usage in the record at great length, the board concluded that:

> * * * even though "LOAD-CAR-RIER" at the time of adoption, may not have been a merely descriptive term as applied to applicant's vehicle load supports, applicant has consistently used it merely as the apt or common descriptive name for these goods, as a result of which, it is believed that it is recognized and referred to as such by the average purchaser of the goods. Certainly, applicant has offered no evidence to suggest otherwise.

Accordingly, it sustained Air Lift's opposition on its second ground. In an opinion on reconsideration, the board stated that,

> * * * contrary to applicant's assertion, while the Board indicated [in its previous opinion] an intent on applicant's part to adopt "LOAD-CAR-RIER" as a trademark, it did not, in any way, indicate that the specimens filed with the subject application did in fact show trademark use of the designation in question.

## OPINION

### I. *Air Lift's Cross Appeal*

Air Lift has filed a "petition for appeal or cross appeal" in this case purporting to bring before us for review the propriety of the board's refusal to rule in its favor on its first ground of opposition. A separate appeal number was assigned to this "appeal," and it was briefed and argued separately, although Maremont and Air Lift filed a combined record in their two appeals.

■ Air Lift's cross appeal was pure surplusage. Appellees in trademark oppositions are entitled to reargue issues which they raised below but on which either they lost or the board did not rely. Popular Merchandise Co. v. "21" Club, Inc., 343 F.2d 1011, 1014–1015, 52 CCPA 1224, 1228–1229 (1965). See also Myers v. Feigelman, 455 F.2d 596, 604, 59 CCPA (1972) (patent interferences), and Powermatics, Inc. v. Globe Roofing Products Co., 341 F.2d 127, 128, 52 CCPA 950, 951 (1965) (trademark interferences). However, Air Lift did file the cross appeal, and the question arises whether that action had any effect other than payment of an unnecessary filing fee and the printing of separate briefs.

In Klemperer v. Price, 271 F.2d 743, 47 CCPA 729 (1959) (per curiam), which was a patent interference, the appellant, like Air Lift here, sought review of the board's unfavorable ruling on an alternative contention, which ruling did not effect the board's *decision*. We dismissed the appeal on appellee's *motion*, saying that *if* the appellee (the loser below) later sought review of the board's *decision* by way of its own appeal, the appellant (the winner below) would be entitled to raise in that appeal the issues he was prematurely seeking to raise by way of a separate appeal.

■ We see no reason why a different rule should obtain in inter partes trademark cases than in patent interferences in this respect. However, we will not dismiss Air Lift's cross appeal sua sponte, since to do so at this late date would unreasonably confuse matters to

no purpose. Here, in contrast to Klemperer v. Price, the losing party below *has* taken an appeal, so there can be no question that a "case or controversy" is properly before us, and the only question is whether Air Lift's action in separating some of its arguments into an unnecessary cross-appeal disables us from considering them. We conclude that it does not.

## II. *The Generic-Name Issue*

Both parties and the board have apparently assumed that the common descriptive name of an article cannot be registered as a trademark and that an opposition may be sustained on that ground. There is no dispute on this point.

Maremont breaks its argument down into three steps: (1) "LOAD-CARRIER" was *capable* of functioning as a trademark on its vehicle load supports as of the date of Maremont's first use, (2) Maremont's initial use of the word "LOAD-CARRIER" on its goods was a *trademark use,* and (3) Maremont did not use the word "LOAD-CARRIER" between its first use and the date thirteen months later when the opposition was filed in such manner and to such an extent as to cause the term to become recognized by the average purchaser of such goods as an "apt or common descriptive name" for the goods.

Air Lift takes the position that Maremont's first point is irrelevant, Maremont having chosen to use "LOAD-CARRIER" as the common descriptive name of its goods rather than as a trademark. It focuses on the numerous exhibits in this case, which Maremont conceded to be "representative and [to] illustrate the manner of use of the term LOAD-CARRIER" by Maremont and its predecessor in interest,[5] arguing that Maremont has used the word "LOAD-CARRIER" in exactly the same manner as it has used the term "shock absorber." It distinguishes the cases cited by Mare-

mont on the ground that they "are all cases wherein a valid trademark at one time existed and the question was one of erosion," in contrast to "the present situation," where "Maremont adopted a generic term which it used to describe, rather than a trademark indicating origin."

We think Maremont's analysis represents the correct approach, and we agree with the result which it urges us to reach.

■ On descriptiveness, we do not think that there can be any serious question. The word "LOAD-CARRIER" is no doubt highly *suggestive* of the function of the class of goods produced by both parties, but it is equally suggestive of many other things—e. g., wheel barrows, dump trucks, freight cars, steamships, and elevators. Air Lift has not asserted that the term was in use as a generic name for overload support devices prior to Maremont's use, and we cannot agree that it is so obviously descriptive that it was incapable of use as a trademark from the start.

The second point is, perhaps, Maremont's weakest. As it concedes, this question boils down to whether its use of "LOAD-CARRIER" in the manner shown by the specimens submitted to the Patent Office constituted trademark use. These specimens were photographs of the cartons for the articles. One is reproduced as an Appendix hereto. As may be seen, on the cartons were printed the words "Gabriel ® LOAD-CARRIER", two drawings of the goods (one of a unit by itself and one of two units installed), a slogan, and various other matter not relevant here. No generic name for the devices was printed on the carton, and the term "LOAD-CARRIER" was not associated with any symbol, word, or other specific indication that it was intended to be a trademark.

■■ With respect to the possible effect on the board's reasoning of the ab-

5. The article is known as a "Gabriel ® LOAD–CARRIER," introduced by The Gabriel Company in 1963. Maremont merged with Gabriel, and the board opinion describes Maremont as the assignee of Gabriel.

'sence of any generic term on the cartons, Maremont argues that:

> * * * there is *no need* for the presentation of a generic term when the mark is affixed to the object in question, or is presented on a carton in juxtaposition to a clear and definitive picture of the goods. [Emphasis in original.]

This argument is not very weighty, for it assumes that "LOAD-CARRIER" was presented on the carton as a "mark," and the very cartons in question are Maremont's principal evidence that "LOAD-CARRIER" was a trademark for the goods. It will be seen that "LOAD-CARRIER" is printed entirely in capital letters in each of its three appearances on the carton, in contrast to the house mark "Gābriel" and to the slogan "Keeps Cars Riding Right-Heavy or Light," and the pictures of the product itself *do* somewhat take the place of, and perform the office normally performed by, a generic term. On balance, we are persuaded that Maremont's use of "LOAD-CARRIER" on the cartons as shown in the specimens submitted to the Patent Office was a trademark use.[6]

■ On the third point in Maremont's analysis, we agree with it that it is somewhat surprising on the face of the matter to find Air Lift arguing that, in the short span of only thirteen months, the word "LOAD-CARRIER" had become the generic name for the devices sold by both parties, and, apparently, several other firms as well, particularly since there already were commonly accepted generic names for such devices.[7] Most, if not all, of the famous "loss-of-rights" cases involved much longer periods of use as generic terms. However, we do not rely merely on the brevity of the time span involved, for conceivably a trademark *could* be lost even in *that* brief span under certain circumstances. Instead, we rely on Air Lift's failure to establish by sufficient evidence that Maremont's trademark had gone into general use by the relevant portion of the consuming public as *the* (or even *a*) generic name for devices of the class here involved. On the present record, we do not feel either that "the *principal* significance of the word * * * [had become] its indication of the nature or class of * * * [goods such as those sold by both parties], rather than an indication of * * * [their] origin," Feathercombs, Inc. v. Solo Products Corp., 306 F.2d 251, 256 (2nd Cir. 1962), cert. den., 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962), or that "to the consuming public as a whole the word * * * [had] lost *all* its trademark significance," Marks v. Polaroid Corp., 129 F.Supp. 243, 270 (D.Mass.1955) (emphasis ours; other emphasis omitted).

### III. *The Likelihood of Confusion Issue*

■ Concerning this aspect of the case, we have little to add to the board's careful opinion. As found by the board, both marks are highly suggestive, and whatever strength each might be said to have in the abstract is further diluted by the ubiquity of very similar marks used by others in the trade. Furthermore, there is persuasive, though not conclusive, evidence in this case in the form of admissions by Air Lift's president that vehicle overload support units are purchased with care and that frequent adoption of the word "LOAD" as

---

6. We recognize that the board expressly declined to decide this question either way. However, we have previously stated that "we undoubtedly have the *power* to proceed on our own and decide questions not reached by the board [there, the *Board of Patent Interferences*] which become relevant only because we have reversed the board on questions which they did reach * * *." Myers v. Feigel-

man, 455 F.2d 596, 604, 59 CCPA (1972). Here, this question has become relevant only because we disagree with the board that the evidence in this case establishes that "LOAD-CARRIER" is "recognized and referred to as * * * [the apt or common descriptive name for goods of the class sold by the parties] by the average purchaser of the goods."

7. See note 3, supra.

a component of marks in this field has conditioned purchasers to look principally to the rest of the mark.

Air Lift has argued that the balance of the two marks, excluding the common portion "LOAD," is identical in meaning and "extremely similar" in sound and appearance, but we cannot agree. They are similar in meaning and somewhat similar in sound and appearance, but no more similar to each other than they both are to many other marks in use in the field. Under the circumstances, we agree with the board that there would be no likelihood of confusion, mistake, or deception stemming from the simultaneous use of the two marks on the directly competitive goods involved here.

### Summary

For the foregoing reasons, we *reverse* the decision of the board in Appeal No. 8675 and state our agreement with the board's conclusion, review of which was sought by means of Appeal No. 8676.

Reversed.

APPENDIX

[A6109]

ALMOND, Judge (dissenting).

I respectfully dissent from the majority's reversal of the decision of the board. I would affirm. While I agree with the majority that there is no likelihood of confusion between Maremont's LOAD-CARRIER and Air Lift's LOAD-LIFTER, I agree with Judge Lane that Maremont has used the term LOAD-CARRIER in only a descriptive manner. As Judge Lane notes, such use is insufficient trademark usage for registration purposes. That alone necessitates affirmance of the board. In addition, however, it seems to me that Maremont's manner of use of the term LOAD-CARRIER also indicates that it regards the term as merely descriptive of its load-supporting devices.

An applicant's activities with regard to the term it seeks to register, and the manner in which that term is used by the applicant, may be supportive of the conclusion that the term is merely descriptive of the goods. Quaker State Oil Refining Corp. v. Quaker Oil Corp., 453 F.2d 1296, 59 CCPA (1972). Here I think the term LOAD-CARRIER is merely descriptive of Maremont's goods as illustrated by the fact that Maremont has used the term in a descriptive manner, and, therefore, admits that the term is in fact descriptive of its goods.

For the foregoing reasons, I would affirm.

LANE, Judge (dissenting).

I disagree with the result reached by the majority in these cases. I would affirm the decision of the TTAB sustaining this opposition on the ground that Maremount has failed to prove use of LOAD-CARRIER as a trademark.

Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines "trademark" as including:

[A]ny word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant *to identify his goods and distin-*

*guish them from those manufactured or sold by others.* [Emphasis supplied.]

Where a combination of words fails to indicate origin and distinguish the goods from those of others, it is not functioning as a trademark and is not registrable. Thus, a combination of words which "when applied to the goods of the applicant is merely descriptive," Lanham Act § 2(e), 15 U.S.C. § 1052(e), and "which has [not] become distinctive of the applicant's goods in commerce," Lanham Act § 2(f), 15 U.S.C. § 1052(f), is not registrable as a trademark. See In re Thunderbird Products Corp., 406 F.2d 1389, 56 CCPA 969 (1969); J. Kohnstam, Ltd. v. Louis Mark & Co., 280 F.2d 437, 47 CCPA 1080 (1960). "Some descriptive words are incapable of registration under any circumstances even if they have acquired a 'secondary meaning,' temporarily, because they are the common names of things." DeWalt, Inc. v. Magna Power Tool Corp., 289 F.2d 656, 662 n. 3, 48 CCPA 909, 919 n. 4 (1961). See also In re Sun Oil Co., 426 F.2d 401, 403, 57 CCPA 1147, 1149 (1970) (Rich, J. concurring); Weiss Noodle Co. v. Golden Cracknel & Specialty Co., 290 F.2d 845, 847, 48 CCPA 1004, 1008 (1961).

On another level, a word may lose its distinctiveness. .

When the meaning of a mark that had previously served as an indication of origin changes so that its principal significance to purchasers is that of indicating the nature or class of goods and its function as an indication of origin is subservient thereto, it is no longer a mark but rather is a generic term.[1]

See King-Seely Thermos Co. v. Aladdin Industries, Inc., 321 F.2d 577 (2d Cir. 1963); DuPont Cellophane Co. v. Waxed Products Co., 85 F.2d 75, (2d Cir. 1936).

Section 45, supra, imposes a condition precedent to the registration of a trademark which is closely tied to descriptiveness or generic connotation. To be a

---

1. Vandenburgh, Trademark Law and Procedure 269 (2d Ed.1963).

trademark, the word or combination of words must distinguish the applicant's goods from those of others, and mere descriptiveness or generic connotation is antithetical to the requisite distinctiveness. The requirements of § 45 and § 2(e), "as this court said in In re Cooper, 254 F.2d 611, 613, 45 CCPA 923 [(1958)], " * * * are 'complementary and opposite sides of the same coin to the extent that a mark which is 'merely descriptive' of the goods to which the applicant has applied it is not being used by him *as a trademark* for those goods and hence, in that use, *is not a trademark.*'" In re Standard Oil Co., 275 F.2d 945, 946, 47 CCPA 829, 831 (1960).

These same considerations apply, in my opinion, to a third level of nondistinctiveness which is what I think is the situation in the present cases. In my view, Maremont has used the combination of words LOAD-CARRIER in a descriptive or generic manner even if it might be said that LOAD-CARRIER neither is inherently merely descriptive of Maremont's goods nor has become generic.

The § 45 definition of "use in commerce" provides:

> For the purposes of this Act a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto * * *.

In the present cases we must turn to the samples supplied by Maremont as evidence of use of LOAD-CARRIER in commerce. As described in the majority opinion, those samples are pictures of the carton in which load-carriers are packaged. In my opinion, the term LOAD-CARRIER is there used in a descriptive or generic capacity to identify the class of goods within which the packaged product falls rather than to distinguish Maremont's product from similar ones of others. See Clairol, Inc. v. Roux Distributing Co., 280 F.2d 863, 47 CCPA 1165 (1960); In re Cooper, supra. There is nothing of a generic character

apart from LOAD-CARRIER on the carton to impart to the purchaser's senses the notion that LOAD-CARRIER is Gabriel's (Maremont's), as opposed to someone else's, specific product of this type.

I cannot agree with the majority that capitalization of LOAD-CARRIER has any significance. "Gabriel" is not in capitals, yet I think that anyone viewing the carton would immediately recognize Gabriel as the manufacturer's trade or house name. Where there is generic language and an arbitrary mark set off by capital letters, the emphasis created by capitalization might there be sufficient to create a distinctive mark. That is not the situation here.

I also disagree that the picture on the carton serves as a substitute for a generic description of the goods. The best that can be said of the picture is that it creates the impression that a load-carrier resembles a shock absorber in appearance and purpose. I still come away from the picture and the other words on the carton with the idea that a load-carrier is a different product than others, such as shock absorbers, and that Gabriel has manufactured the load-carrier contained in the sample carton, but that other automobile accessory manufacturers would also produce load-carriers. Such an impression is in marked contrast to that which a trademark creates.

The overriding consideration when trademark use is at issue is whether or not the party asserting such use has used his words or symbols in a manner which distinguishes his product from similar ones of others. I am of the opinion that Maremont has used the words LOAD-CARRIER in a purely descriptive or generic manner on the goods in commerce and not in a manner which would accomplish the function of a trademark. This is dispositive of the appeals and renders unnecessary any consideration of Air Lift's alternative arguments that LOAD-CARRIER is inherently merely descriptive, or if not merely descriptive *ab initio*, it has become generic. I do agree that the contemporaneous use of

LOAD-CARRIER and LOADLIFTER would not cause confusion, mistake or deception.

I would affirm the decision of the Trademark Trial and Appeal Board on the ground I have stated.