Hearing:                                    Paper No. 18
September 23, 1998                          EWH/MM

THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB          AUG, 27, 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Log Cabin Homes, Ltd.
_____

Serial No. 74/682,845
_____

David L. Just of Lucas & Just for Log Cabin Homes, Ltd.

Vivian Micznik First, Trademark Examining Attorney, Law
Office 104 (Sidney Moskowitz, Managing Attorney).
_____

Before Simms, Hanak and Hohein, Administrative Trademark
Judges.

Opinion by Hanak, Administrative Trademark Judge:


Log Cabin Homes, Ltd. (applicant) seeks to register
LOG CABIN HOMES in typed drawing form for "architectural
design of buildings, especially houses, for others, and
retail outlets featuring kits for constructing buildings,
especially houses."  The application was filed on June 1,
1995, with a claimed first use date of March 1987.  In the
application, applicant disclaimed the exclusive right to

use HOMES apart from the mark in its entirety. Subsequently, applicant noted that it had obtained a registration of the mark THE ORIGINAL LOG CABIN HOMES and design for identical services. See Registration No. 1,920,361 which issued September 19, 1995. Based upon this earlier registration as well as its sales and advertising figures, to be discussed at greater length later, applicant alleged that its mark "LOG CABIN HOMES has acquired distinctiveness." (Applicant's brief page 10).

The Examining Attorney refused registration on the basis that applicant's mark is generic for its services, and if not generic, then applicant's mark is so highly descriptive that applicant's showing of acquired distinctiveness pursuant to Section 2(f) of the Lanham Trademark Act is insufficient.

When the refusal to register was made final, applicant appealed to this Board. Applicant and the Examining Attorney filed briefs and were present at a hearing held on September 23, 1998.

We will first consider whether applicant's mark is a generic term for applicant's services. In making this determination, we have the benefit of a very recent decision of our primary reviewing Court, namely, In re The

American Fertility Society, __F.3d__, __USPQ2d__ (Fed. Cir. 1999).

As applicant acknowledges, there are in the record "a few hundred" articles wherein the term "log cabin home(s)" is used in a generic manner for dwellings made of logs. However, applicant characterizes these few hundred articles as an "abuse [of] applicant's trademark LOG CABIN HOMES." (Applicant's brief page 5). We simply disagree. The hundreds of articles referenced by the Examining Attorney appear in national magazines as well as in newspapers published in virtually every geographic area of the United States. These articles uniformly depict "log cabin home(s)" in all lower case letters, and there is no suggestion whatsoever that when this term is used, it is used to refer to applicant's specific services. Indeed, applicant makes no argument that these hundreds of references to log cabin home(s) are references to applicant's services.

Thus, the evidentiary record here is in stark contrast to that in American Fertility Society where the Examining Attorney was unable to find even one example of the use by others of the term "society for reproductive medicine." Moreover, applicant has totally failed to make of record any evidence establishing that "log cabin homes" is a mark

indicating services emanating solely from applicant.  For example, applicant has not made of record any affidavits or declarations from competitors, dealers or ultimate consumers stating, in essence, that they view the term LOG CABIN HOMES as a mark indicating services emanating solely from applicant.

Applicant advances a second argument as to why its purported mark is not generic.  According to applicant, "the term LOG CABIN HOMES has only an incongruous meaning as applied to applicant's services."  (Applicant's brief page 5).  Applicant readily concedes that "the term 'log cabin' alone is certainly well known to every adult and schoolchild who took American history … [and that] even the term 'log homes' is a commonly used expression for the new style of homes that are built with logs."  (Applicant's brief page 7).  However, applicant contends, at pages 7 and 8 of its brief, that its purported mark is incongruous in the following manner:

> If you have the combination "log cabin," you have
> a completely understood term.  But "cabin" and
> "home" are synonyms.  So where the word "homes"
> is added to the word "cabin," it forms the
> incongruous trademark LOG CABIN HOMES.

There are two responses to applicant's argument. First, the hundreds of stories from magazines and newspapers all across the country using the generic term

4

"log cabin home(s)" demonstrate that said term is certainly not incongruous and instead has a well understood meaning.

Second, applicant has acknowledged that the term "log cabin" is very well known and that in addition, it is reminiscent of "the type of structure in which Abraham Lincoln was brought up." (Applicant's brief page 5). Indeed, a "cabin" is defined as "a small, one-story house built simply or crudely, as of logs," often "designed for a brief stay, as for overnight." Webster's New World Dictionary (2d ed. 1970). Thus, applicant is simply wrong in stating that the words "cabin" and "home" (or "house") as synonyms. Most homes or houses are not crude, and they certainly are not used for brief stays. While perhaps some of the articles made of record by the Examining Attorney use the term "log cabin home" in a manner somewhat synonymous with the term "log cabin," other articles use the term "log cabin home" to refer to larger, more permanent dwellings. For example, an article appearing in the February 10, 1997 edition of The Herald (Rock Hill, South Carolina) states that "the Dean's expansive log cabin home is intact." An article from the September 22, 1996 edition of the Chattanooga Free Press refers to a "Cape-style log cabin home." Another article from the September 22, 1996 edition The News and Observer (Raleigh, North

Carolina) talks about the Reverend Billy Graham inviting reporters "last month to his log cabin home on the mountain." One doubts that a successful public figure such as the Reverend Graham would have as his second home a primitive, one room log cabin of the style of Abraham Lincoln. Another story from the April 21, 1996 edition of The Times-Picayune refers to a "two-story log cabin home on twenty acres near Roundup, Montana." Finally, a story appearing in the February 15, 1996 edition of Professional Builder bears the following heading: "This is luxury, not Lincoln logs." The story then goes on to describe a builder who caters primarily to out-of-state clients "who want a custom-built log cabin home."

In short, we find nothing incongruous about the term "log cabin home." It has appeared in hundreds of articles, as applicant itself acknowledges, and moreover, this term refers not only to small log cabins, but in addition, it has come to designate larger, more permanent homes constructed of logs.

Finally, applicant advances a third argument as to why its purported mark is not generic. Applicant notes that it is seeking to register LOG CABIN HOMES for "services, not goods." (Applicant's brief page 3). Applicant then goes on to note that "there is absolutely no evidence that

anyone has ever referred to one of applicant's retail outlets as a LOG CABIN HOMES store or anything even similar." (Applicant's brief page 4). Applicant is simply in error. Applicant's own specimens of its service mark use prominently feature at the very top the words LOG CABIN HOMES.

Both in its brief and at the oral hearing applicant conceded that the terms "log cabin" and "log homes" are generic for dwellings made of logs. Following applicant's reasoning, then presumably applicant could also register these two terms as service marks for "architectural design of buildings, especially houses, for others, and retail outlets featuring kits for constructing buildings, especially houses." In other words, if an Examining Attorney failed to present evidence that the clearly generic terms "log cabin" and "log home" had been used as the names of retail outlets or stores, then an applicant would be free to register these clearly generic terms for retail outlets or stores featuring the  design of and kits for "log cabins" and "log homes."

Our primary reviewing Court has previously rejected the very argument advanced by applicant in its decision In re Northland Aluminum Products, 777 F.2d 1556, 227 USPQ 961 (Fed. Cir. 1985). In Northland Aluminum, the Court found

7

that the proposed mark BUNDT was generic for a "ring cake mix" (emphasis added) despite the fact that the evidence presented by the Examining Attorney simply showed that the term "bundt" was generic for a type of cake. With one possible exception, none of the evidence presented by the Examining Attorney showed that the term "bundt" was generic for a ring cake mix. In so doing, the Court had the following to say: "We agree with the Board that it is not of trademark significance to differentiate a cake made from a cake mix from a cake made from a recipe." 227 USPQ at 964.

Applicant attempts, at pages 4 and 5 of its brief, to distinguish Northland Aluminum from the present case in the following manner:

> The Northland Aluminum case held that a name which is descriptive of the goods (BUNDT for cakes) is also descriptive for the cake mix from which the goods are made. It said absolutely nothing about the design of the cake mixes. Under the Examining Attorney's reasoning, a food laboratory which developed recipes for food, including cakes, could not register the trademark BUNDT because one of its products it experiments on is BUNDT cakes. But this is simply not the holding of Northland Aluminum.

Three comments are in order. First, the Court in Northland Aluminum did not merely find that the term "bundt" was descriptive, but instead it found that the term was "a common descriptive name for a type of ring cake, and

is not registrable as a trademark for 'ring cake mix.'"
227 USPQ at 964. In other words, the Court found that the
term "bundt" was not merely descriptive, but instead was
generic.[1]

Second, even if we accept applicant's reasoning, what
applicant fails to note is that its description of services
includes not only the "architectural design of buildings,
especially houses," but also "retail outlets featuring kits
for constructing buildings, especially houses." A kit for
constructing a house bears an extremely similar
relationship to a house as does a ring cake mix to a ring
cake. Thus, applicant's argument about the Court in
Northland Aluminum not discussing "the design of the cake
mixes" totally overlooks the fact that applicant's chosen
description of services also includes "retail outlets
featuring kits for constructing buildings, especially
houses." Therefore, even assuming for the sake of argument
that applicant's proposed mark is not generic as applied to
the architectural design of buildings, it clearly is

---

[1] As Professor McCarthy notes, "some semantic confusion arose
prior to 1989 because sections 14 and 15 of the Lanham Act used
the term 'common descriptive name' to denote the generic name of
a product or service. … This confusion came to an end when,
effective in 1989, the Trademark Law Revision Act replaced the
statutory phrase 'common descriptive name' with 'generic name,'
thereby codifying prior judicial interpretation." 2 J. McCarthy,
McCarthy on Trademarks and Unfair Competition Section 12:57 at
pages 12-108 to 12-109 (4th ed. 1999).

generic as applied to retail outlets featuring kits for constructing buildings.  It is well settled that if a term is generic for some of the goods or services listed in an application, "registration is properly refused."  In re Analog Devices Inc., 6 USPQ2d 1808, 1810 (TTAB 1988), aff'd 871 F.2d 1097, 10 USPQ2d 1879 (Fed. Cir. 1989).

Third, we simply do not accept applicant's argument that it can obtain exclusive service mark rights in a word or term for the architectural design of a particular type of building when that word or term is a generic name for the particular type of building.

Before leaving the issue of genericness and turning to the issue of acquired distinctiveness, we wish to make two comments which are pertinent to both issues.  First, we note again that applicant has made of record no evidence regarding how its competitors, dealers and ultimate consumers perceive the term "log cabin homes."  Such evidence could have been in the form of declarations or affidavits.  Thus, we have no evidence showing that competitors, dealers and ultimate consumers either (1) have perceived from the very beginning the term "log cabin homes" as a service mark and not as a generic term, or (2) have come to recognize the term "log cabin homes" as having acquired a secondary meaning, that is to say, as having

acquired distinctiveness indicating services emanating from applicant.

Second, applicant makes the argument that its "trademark [sic] LOG CABIN HOMES has acquired distinctiveness because of [applicant's] prior Registration No. 1,920,361 for substantially the same mark [THE ORIGINAL LOG CABIN HOMES and design] used on identical services." (Applicant's brief page 9). While applicant has referenced its prior registration solely with regard to the issue of acquired distinctiveness, we believe that said registration is pertinent to both the issue of acquired distinctiveness and the issue of genericness.

Put quite simply, the words THE ORIGINAL in applicant's other mark serve to educate the public that there are other designers and retailers of "log cabin homes." Thus, applicant's use of the mark THE ORIGINAL LOG CABIN HOMES and design actually detracts from applicant's claim that the term "log cabin homes" per se has acquired distinctiveness indicating services emanating from applicant.

Moreover, applicant's use of the mark THE ORIGINAL LOG CABIN HOMES and design would actually reinforce the belief of competitors, dealers and ultimate consumers that the term "log cabin homes" is indeed generic. In this regard,

reference is made to the case of <u>King-Seeley Thermos Co. v.</u> <u>Aladdin Industries</u>, 321 F.2d 577, 138 USPQ 349 (2d Cir. 1963).  In <u>King-Seeley</u>, the Court found that plaintiff King-Seeley's mark THERMOS had become generic.  However, rather than permitting defendant Aladdin to make unlimited use of the term "thermos" in connection with vacuum-insulated bottles, the Court required, among other things, that Aladdin "never use the words 'original' or 'genuine' in describing its product."  138 USPQ at 352.  The use of the words "original" and "genuine" were reserved for King-Seeley.  The <u>King-Seeley</u> case is instructive in that it demonstrates that the use of the word "original" in front of a word or term indicates that that word or term is used by others to designate a particular type of product or service, and thus is generic.

We turn now to the issue of acquired distinctiveness. Besides relying upon its prior registration of THE ORIGINAL LOG CABIN HOMES and design in an effort to show that the term "log cabin homes" had become distinctive of its services, applicant also relied upon the March 1, 1996, declaration of one of its officers, Thomas J. Vesce.  Mr. Vesce declared that "applicant has used the trademark LOG CABIN HOMES continuously in interstate commerce since at least as early as March 1987"; that "applicant uses the

trademark in commerce for the custom architectural design of buildings and in retail outlets featuring kits for constructing buildings"; that "over the last five years, sale of goods by the applicant as a result of applicant's services have averaged substantially greater than $4,000,000 per year"; and that "over the same five year period, advertising of the trademark LOG CABIN HOMES for custom houses and retail sales of kits has exceeded $1,000,000."  Mr. Vesce went on to declare that with  one notable exception, "sales under the trademark LOG CABIN HOMES have been substantially exclusive by the applicant."

At the outset, we note that Mr. Vesce's declaration is somewhat confusing in that he repeatedly uses the term "trademark" and refers to the "sale of goods by the applicant."  Thus, we are not certain that the sales figures of 4 million dollars per year and total advertising of expenditures of over 1 million dollars pertain to the services for which applicant seeks to register the term "log cabin homes."  However, even assuming for the sake of argument that the sales and advertising figures all relate to services for which applicant seeks registration, we find that given the very highly descriptive nature of the term "log cabin homes" (assuming said term is not generic, which it is), that said figures are simply insufficient to

13

demonstrate that the term "log cabin homes" has come to be associated with services emanating from applicant.

Moreover, given the relatively high cost of applicant's services, sales of over 4 million dollars per year translate into relatively few log cabin homes originating from applicant's architectural designs and kits.  Indeed, at the hearing applicant's attorney stated that applicant is involved in designing and selling kits for only about 100 log cabin homes per year.

It must be remembered that as a "mark's descriptiveness increases," the amount of proof required to demonstrate acquired distinctiveness likewise increases. Yamaha International v. Hoshino Gakki, 840 F.2d 1572, 6 USPQ2d 1001, 1008 (Fed. Cir. 1988).  Again, we wish to reiterate that applicant has made of record absolutely no evidence showing how competitors, dealers and ultimately consumers perceive the term "log cabin homes."

Decision: The refusal to register on the basis that applicant's alleged service mark is a generic term for applicant's services is affirmed. Moreover, in the event that our determination of genericness is reversed, we find that the term "log cabin homes" is so very highly descriptive of applicant's services such that applicant's showing of acquired distinctiveness is simply insufficient. Accordingly, the refusal to register on this second basis is also affirmed.

R. L. Simms

E. W. Hanak

G. D. Hohein
Administrative Trademark
Judges, Trademark Trial
 and Appeal Board