The portion of the district court's judgment from which Sanyo appeals is reversed.

The **MURPHY DOOR BED CO., INC.,**
Plaintiff–Appellee,

v.

**INTERIOR SLEEP SYSTEMS, INC.,
d/b/a Murphy Beds, etc., Murphy Bed
Co. of America, Inc. in Florida, Murphy
Bed Co. of America, Inc. in Georgia,
and Frank Zarcone, Individually, Defendants–Appellants.**

Nos. 727, 837, Dockets 88–7877, 88–9043.

United States Court of Appeals,
Second Circuit.

Argued Feb. 16, 1989.
Decided May 1, 1989.

Bruce E. Lilling, White Plains, N.Y. (Talay Hafiz, Lilling & Greenspan, White Plains, N.Y., Cort, Flint, Greenville, S.C., of counsel), for defendants-appellants.

Leon Friedman, New York City (Robert I. Skoy, Mineola, N.Y., of counsel), for plaintiff-appellee.

Before LUMBARD and MINER, Circuit Judges, and SPRIZZO, District Judge.*

MINER, Circuit Judge:

Defendants-appellants appeal from a judgment entered in the United States District Court for the Eastern District of New York (Mishler, J.), awarding plaintiff, the Murphy Door Bed Company ("Murphy" or "Murphy Co."), $6330 with interest in damages for breach of contract, $801,161 in compensatory damages and $25,000 in punitive damages for trademark infringement and unfair competition. The judgment includes a permanent injunction enjoining all defendants from use of the Murphy name.

Murphy is incorporated in New York and has its principal place of business there. Each of the defendant corporations is incorporated either in Florida or Georgia and each has its principal place of business in the state where it is incorporated. Defendant Frank Zarcone is a citizen of Florida. Jurisdiction therefore properly was invoked in the district court under the diversity of citizenship statute, 28 U.S.C. § 1332. The district court determined that defendants had committed a breach of contract by failing to pay for goods received, and by using the name Murphy bed without authorization, such use having also been found to constitute trademark infringement and unfair competition. The damages were assessed against defendants Frank Zarcone and Interior Sleep Systems, Inc. ("ISS"). The $6330 award apparently is not contested on appeal. Plaintiff cross-appeals from the judgment, seeking to subject defendants Murphy Bed Co. of America, Inc. in Georgia ("MBCA Ga.") and Murphy Bed Co. of America, Inc. in Florida ("MBCA Fl.") to the damages awards.

We hold that "Murphy bed" is a generic term, having been appropriated by the public to designate generally a type of bed. Consequently, defendants could not have infringed on plaintiff's trademark, alleged to be Murphy bed, and the district court erred in finding trademark infringement. We agree with the district court, however, that defendants breached their contractual obligation to refrain from using the term Murphy bed after termination of their distribution agreement with the Murphy Co. Further, we agree with the district court that defendants engaged in unfair competition by passing off beds of their own manufacture as beds of the Murphy Co. Accordingly, we affirm the court's entry of a permanent injunction prohibiting defendants from use of the term Murphy bed.

As to remedy for damage to Murphy by trademark infringement and unfair competition, the district court, constrained by a stipulation of the parties to limit compensa-

---

* Hon. John E. Sprizzo, United States District Court for the Southern District of New York, sitting by designation.

tory damages to defendants' profits gained from improper use of the Murphy name, awarded plaintiff compensatory damages based on defendants' *gross* profits. We hold that in awarding damages for unfair competition—damages for trademark infringement are inappropriate in this case—defendants' profits should be calculated by deducting all costs attributable to items sold in violation of plaintiff's rights. Accordingly, we remand the case for recalculation of damages based on defendants' *net* profits. Additionally, because the punitive damages award was based on findings of trademark infringement as well as unfair competition, without apportionment, we remand the case for reformulation of punitive damages. Finally, we do not decide the issue raised on cross-appeal, because the extent of the judgment's coverage now may be properly specified by the district court.

## BACKGROUND

At the turn of this century, William Lawrence Murphy invented and manufactured a bed that when not in use could be concealed in a wall closet. By using a counter-balancing mechanism, the bed could be lowered from or raised to a closet in a wall to which the bed is hinged. In 1918, the United States Patent Office granted Mr. Murphy a patent for a "pivot bed," which was substantially similar to the wall bed. Mr. Murphy incorporated in New York in 1925 as the Murphy Door Bed Company and began to sell the wall bed under the name of "Murphy bed." Since its inception, the Murphy Co. has used the words Murphy and Murphy bed as its trademark for concealed beds. Other manufacturers of wall beds generally describe their products as "wall beds," "concealed beds," "disappearing beds," "authentic adjustable hydraulic beds" and the like, but rarely as Murphy beds. In fact, at least twice, when independent companies marketed their products as Murphy beds, Murphy complained to them and, as a result, the companies refrained from further deliberate use of the term Murphy bed.

On March 23, 1981, and again on November 16, 1982, the Patent and Trademark Office ("PTO") denied the Murphy Co.'s application to register the Murphy bed trademark. The PTO examining attorney explained that the words "Murphy bed" had become generic and that the phrase Murphy bed was "merely descriptive of a characteristic of the goods." In August 1984, the Trademark Trial and Appeal Board ("TTAB") affirmed the denial of registration. *See In re Murphy Door Bed Co., Inc.*, 223 U.S.P.Q. 1030 (T.T.A.B.1984). The TTAB noted that "Murphy bed has for a long period of time been used by a substantial segment of the public as a generic term for a bed which folds into a wall or a closet." *Id.* at 1033.

In December 1981, Frank Zarcone, on behalf of ISS and himself, entered into a distributorship agreement with the Murphy Co. and became the exclusive distributor of the Murphy bed in the four Florida counties of Broward, Dade, Palm Beach and Monroe. The agreement, in the form of a letter signed by both Murphy and Zarcone, provided in part that:

4) ... Interior Sleep Systems will pay for material purchased within 30 days of date of Murphy's invoice....

5) —Whenever the Murphy name is used, it must be in capital letters and identified by the word trademark or TM adjacent to Murphy. Cabinets or other material not furnished by Murphy will not be promoted or sold as Murphy products.

. . . . .

8) —Upon termination of this agreement Interior Sleep Systems, Inc. agrees to discontinue the use of the name "Murphy bed".

After learning of the TTAB's 1984 decision denying Murphy's application for trademark registration, Zarcone formed MBCA Ga. in December 1985, and MBCA Fl. in February 1986. In addition, Zarcone obtained a telephone listing in New York City under the name "Murphy Bed Company." [1]

---

**1.** Because the record is not clear as to what

actions are attributable to which of Zarcone's

On March 20, 1986, Magnolia Builders ("Magnolia") of Pensacola, Florida ordered 109 Murphy beds, Model SL 60/80, from MBCA Fl. Zarcone previously had filled similar Magnolia orders with beds of the Murphy Co. To fill this order, however, Zarcone delivered beds designated as Murphy bed Model SL 60/80 but that were, in fact, manufactured by one of his companies.

Thereafter, Zarcone ordered from the Murphy Co. forty-eight Murphy beds, which were delivered with an invoice on May 21, 1986. Zarcone habitually paid Murphy sixty to ninety days after being billed, for which he always was charged interest of 1½% for each month that payment was overdue. On this occasion, however, more than ninety days passed without payment and so, on August 21, 1986, Zarcone was served by ordinary mail a notice of cancellation of the distribution agreement. Zarcone denies receipt of the letter. Murphy then notified Zarcone by a letter sent by certified mail, dated September 24, 1986 and received by Zarcone on September 30, 1986, that in keeping with paragraph 8 of the agreement, Zarcone was within "ten (10) days from receipt of this letter to remove the name 'Murphy Bed' from all signs, vehicles, billboards, and all advertising." Despite receipt of this second letter, Zarcone continued to advertise regularly in south Florida using the Murphy name, including describing his product as "Murphy Bed Co. of America, Inc.—Original Wall-Bed Systems" and "The New Murphy Beds ... Original Wall Bed Systems."

Murphy initiated this action on December 19, 1986, seeking compensation, punitive damages, and injunctive relief based on claims of: (i) trademark infringement, (ii) unfair competition and (iii) breach of contract. Defendants denied the allegations of the complaint and asserted, *inter alia*, four affirmative defenses: (i) equitable estoppel, (ii) failure of consideration in forming the distribution contract, (iii) fraud in the inducement of the contract and (iv) res judicata and collateral estoppel by reason of the TTAB's denial of registration.

A bench trial was held and in a decision and order dated May 13, 1988, the district court found for the Murphy Co. on all counts. 687 F.Supp. 754, 756 (E.D.N.Y. 1988). First, the court ruled that the name Murphy was not generic because a "secondary meaning" had been attributed to it by the general public, and that the common law of trademark therefore protected the Murphy Co. *Id.* at 759. Thus, the court held that the burden was on the defendants to show abandonment of the Murphy trademark—i.e. that the trademark had lost its significance. *Id.* at 760. The court then found that defendants did not sustain their burden. *Id.* at 761.

Second, the court held that, with the sale of the 109 beds to Magnolia and the post-contract termination advertisements using the word "original," Zarcone had engaged in unfair competition by passing off products of his own manufacture as those of the Murphy Co. *Id.* at 762-63. Third, the court held that because Zarcone had used the name Murphy after termination of the distributorship agreement, he had committed breach of contract. *Id.* at 763. Finally, the court rejected Zarcone's affirmative defenses because the Murphy Co. owned the "Murphy" trademark, and fraud in the inducement of the agreement had not been demonstrated. *Id.*

Accordingly, the district court ordered a preliminary injunction enjoining all defendants from violating Murphy's rights under the common law of trademark and of unfair competition. It also assessed against only ISS damages of $6,330 for failure to pay for the forty-eight beds delivered to Zarcone by Murphy in May 1986. *Id.* at 764.

A separate trial was held to determine the remaining damages. At a deposition prior to both trials, the parties had stipulated to limit recovery of damages "to the profits made by the defendants through the sale of products bearing the Murphy

companies, this opinion will refer to Zarcone even when addressing defendants' corporate ac-

tions.

name." At the second trial, Zarcone failed to produce any records regarding its gross sales of Murphy beds. However, Murphy's expert testified, in the words of the district court, that "gross sales of wall beds and cabinets sold by [ISS] from June 1, 1986 to May 30, 1988 under the Murphy name when in fact not manufactured by Murphy was $1,780,357." Using this figure, and deducting from it the estimated costs of the goods sold, the court, by an order and a judgment, both dated September 14, 1988, assessed against both Zarcone personally and ISS compensatory damages of $801,-161, with interest from May 30, 1988, for trademark infringement and unfair competition. Punitive damages of $25,000 for trademark infringement and unfair competition also were assessed against Zarcone personally and ISS, without specifying what portion of the overall punitive damages award was allocated to each claim. A permanent injunction enjoining all defendants, including MBCA Ga. and MBCA Fl., from infringing upon the Murphy trademark replaced the temporary injunction of the first order. The court reiterated its earlier assessment of $6330 in damages for breach of contract, this time including Zarcone in the liability and adding interest from May 21, 1986, the date Zarcone was billed by Murphy for the forty-eight beds. Thus, the decision and order dated September 14, 1988 awards the Murphy Co. "the sum of $801,161 as compensatory damages and the sum of $25,000 as punitive damages, a total of $826,161[,] and the sum of $6,330 with interest from May 21, 1986."

Defendants filed a notice of appeal on October 12, 1988. On November 17, 1988, plaintiff moved to correct the damages portion of the judgment to have it include MBCA Ga. and MBCA Fl., and, on the same day, filed a notice of cross-appeal seeking from this Court the same correction. The district court refused to consider the motion on the ground that it had lost jurisdiction over the matter because the case already was on appeal.

## DISCUSSION

### 1. *Trademark Infringement*

The district court found that Murphy had shown that the term Murphy bed had sec-

ondary meaning—i.e. that the term symbolized a particular business, product or company—and thus was protectable. As a result, the court assigned to defendants the burden of proving that the term somehow had been transformed into a generic phrase. The defendants did not sustain their burden, in the view of the court. Defendants now claim that the court improperly placed the burden of proof upon them, arguing that, instead, Murphy should have been required to prove that the trademark was not generic.

■ A term or phrase is generic when it is commonly used to depict a genus or type of product, rather than a particular product. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). When a term is generic, "trademark protection will be denied save for those markets where the term still has not become generic and a secondary meaning has been shown to continue." *Id.* at 10. We have held that "the burden is on plaintiff to prove that its mark is a valid trademark ... [and] that its unregistered mark is not generic." *Reese Publishing Co. v. Hampton Int'l Communications, Inc.*, 620 F.2d 7, 11 (2d Cir.1980).

■ As the Murphy mark is unregistered, *Reese* suggests that the district court erred in shifting the burden of proof to the defendants. However, the words at issue in *Reese*, "Video Buyer's Guide," were of common use before the product developer applied them to his product, whereas here, the term Murphy bed was created for its purpose by the manufacturer and only thereafter was it adopted by the public as a matter of common use. *See Gimix v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir.1983) (differentiating between term in common usage before application to product and coinage of term to suit product that is later expropriated). It was this genericness of an "invented" term that Learned Hand addressed when determining whether "aspirin," a coined word, had been so adopted by the lay public as to become generic. *See Bayer Co. v. United Drug*

*Co.*, 272 F. 505, 509 (S.D.N.Y.1921); *see also King–Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 579 (2d Cir.1963) (wide-spread use of the word "thermos," despite having been invented by plaintiff for description of vacuum bottle, created genericness); *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75, 81 (2d Cir.) (expropriation by public of word "cellophane" created genericness), *cert. denied*, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936). We find this distinction important and hold that where the public is said to have expropriated a term established by a product developer, the burden is on the defendant to prove genericness. Thus, critical to a trial court's allocation of proof burdens is a determination of whether the term at issue is claimed to be generic by reason of common usage or by reason of expropriation. This presumption of non-genericness of a product name in the case of apparent public expropriation is justified by the commercial protection a developer of innovations deserves.

 The Murphy Co. was the first to employ the word Murphy to describe a bed that could be folded into a wall closet. It is claimed that over time the public adopted, or, rather, expropriated, the term Murphy bed as a synonym for any bed that folds into a closet. Accordingly, the district court was correct in placing the burden of proof of genericness upon the defendants. We find, however, that Zarcone did indeed establish the genericness of the term Murphy bed.

The following factors combined lead us to conclude that Zarcone showed at trial that today the term Murphy bed, in the eyes of "a substantial majority of the public," *King–Seeley*, 321 F.2d at 579, refers to a species of bed that can fold into a wall enclosure. First, the decision of the PTO, and certainly the TTAB, is to be accorded great weight. *See Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir.1971). The dis-

trict court explicitly rejected the decisions of the PTO and TTAB finding genericness, despite acknowledging their persuasive force. Second, the term Murphy bed is included in many dictionaries as a standard description of a wall-bed. *See, e.g.*, Webster's Third New International Dictionary 1489 (1981). While dictionary definitions are not conclusive proof of a mark's generic nature, they are influential because they reflect the general public's perception of a mark's meaning and implication. *See Gimix*, 699 F.2d at 905. Third, Zarcone introduced as evidence numerous examples of newspaper and magazine use of the phrase Murphy bed to describe generally a type of bed. Again, such evidence is not proof positive, but it is a strong indication of the general public's perception that Murphy bed connotes something other than a bed manufactured by the Murphy Co. *See Dan Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014 (C.C.P.A.1979).

In finding a lack of genericness, the district court was influenced by Murphy's efforts at policing its mark. The court noted with approval instances where Murphy complained to those who had used the term Murphy bed to describe beds not necessarily produced by Murphy. 687 F.Supp. at 761. However, when, as here, the mark has "entered the public domain beyond recall," policing is of no consequence to a resolution of whether a mark is generic. *King–Seeley*, 321 F.2d at 579.[2]

Because we find that the evidence presented at trial demonstrated the genericness of the term Murphy bed, the claim for trademark infringement must fail. Neither statutory law, namely the Lanham Act, nor common law supports a claim for trademark infringement when the mark in question is generic. *See CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 13 (2d Cir.1975). Murphy argues that state law entitles the owner of a generic term that has secondary meaning to

**2.** Indeed, the only evidence that even arguably supports the view that the mark was not generic is the circumstance that other manufacturers did not use the term Murphy bed to describe their beds. However, that fact is not sufficient to support a conclusion that the mark is not generic, especially since Murphy's action in policing the mark might well have deterred other manufacturers from using the term Murphy bed in describing their products.

enforceable rights. The cases upon which Murphy relies, however, address the situation where a generic term already in public use later acquires secondary meaning by virtue of a product developer's unique use, thus warranting trademark protection. *See, e.g., Anti–Defamation League of B'Nai B'rith v. Arab Anti–Defamation League,* 72 Misc.2d 847, 855, 340 N.Y.S.2d 532, 534–44 (1972). They have no applicability where, as here, the trademark was initially an invented term and lost its protection because of later public expropriation.

## 2. *Unfair Competition*

■ A claim of trademark infringement is but a part of the broader claim of unfair competition. *Standard Paint Co. v. Trinidad Asphalt Mfg. Co.,* 220 U.S. 446, 457, 31 S.Ct. 456, 458, 55 L.Ed. 536 (1911). Thus, while the mark Murphy bed may be generic and not entitled to trademark protection, Murphy's claim of unfair competition is not foreclosed.

■ "[U]nfair competition ... encompass[es] a broader range of unfair practices which may be generally described as a misappropriation of the skill, expenditures, and labor of another." *American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 662 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). Such practices include "confusing the public into mistakenly purchasing the product in the belief that the product is the product of the competitor." *Id.* Because the term Murphy bed is generic, Zarcone did not engage in unfair competition by selling and advertising his products as Murphy beds; Zarcone did engage in unfair competition, however, by passing off products of his own manufacture as Murphy Co. products. He filled the Magnolia order with beds that he manufactured but described in the invoice as Murphy beds with Murphy Co. style numbers. Moreover, Zarcone advertised in newspapers the wall beds that he manufactured as "Murphy Bed Co. of America, Inc.—Original Wall–Bed Systems" and "The New Murphy Beds ... Original Wall Bed Systems." Even though

"original" might refer to the genus of design rather than to a bed manufactured by the Murphy Co., there is no doubt that the public generally would associate the term "original" with the first company to manufacture Murphy beds, the Murphy Co. As the district court found, Zarcone "intentionally represented his product as plaintiff's wall bed." 687 F.Supp. at 763. That is unfair competition. *See King–Seeley,* 321 F.2d at 581 ("thermos" held to be generic but defendants prohibited from using term "genuine" or "original"); *Paul Westphal v. Westphal's World's Best Corp.,* 216 A.D. 53, 63, 215 N.Y.S. 4, 13 (1st Dep't) (defendant cannot advertise its hair tonic as the original and genuine formula), *aff'd,* 243 N.Y. 639, 154 N.E. 638 (1926).

## 3. *Breach of Contract*

■ The district court permanently enjoined defendants from further use of the Murphy name. Although the injunction was issued to prevent trademark infringement, it was proper because defendants had contracted to refrain from use of the Murphy name in the event of a termination of the distribution agreement and did not so refrain. The contract was supported by valid consideration; defendants had an exclusive and valuable distributorship in four key counties in Florida to sell well-recognized products manufactured by Murphy. The contract was properly terminated by September 30, 1986, when Zarcone received the certified letter from the Murphy Co. demanding that he cease use of the Murphy name. Moreover, the propriety of the clause prohibiting Zarcone's use of the Murphy mark upon termination of his distributorship is not affected by the fact that the term Murphy bed is generic. "Most things which people contract not to do ... are lawful things which *but* for the contract they might do freely." *Overhead Door Corp. v. Nathanson,* 291 F.Supp. 961, 963 (W.D.N.C.1968).

Defendants now argue that the contract was void *ab initio* because its purpose, allegedly the conveyance of trademark rights, was frustrated because the mark was generic. However, there is no indica-

tion that a transfer of trademark rights was the essence of the distributorship agreement. The contract simply was a distribution arrangement by which Zarcone obtained exclusive rights to sell Murphy Co. products. Furthermore, for five years defendants used the mark without interference and the rights they enjoyed paralleled the trademark rights they claim they should have received. Defendants therefore cannot credibly argue frustration of purpose.

Nor can defendants successfully claim fraud in the inducement of the distributorship contract. Without a showing of knowledge of false representation and intent to deceive Zarcone, fraud by Murphy cannot be established. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980) (New York law), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). Such scienter was not demonstrated at trial.

As to the delivery of the forty-eight beds to ISS from Murphy for which ISS did not pay, the district court assessed damages of $6,330 with interest against Zarcone personally and ISS. ISS does not contest this award.

### 4. Damages

Compensatory and punitive damages were awarded for both trademark infringement and unfair competition without a specific allocation of damages to each cause of action. Because we find that the Murphy bed mark is generic, only the district court's finding of unfair competition can support the compensatory damages award. This alone, however, does not require an adjustment of the award amount because the parties stipulated as to the measure of compensatory damages, regardless of the number of underlying claims. During a deposition plaintiff's attorney stated, with prompting and acceptance from defendants: "For the purpose of the record, we are willing to state we will limit our scope of proof of damages ... [and] recovery, to the profits made by the defendants through the sale of products bearing the Murphy name." Thus, even

with only proof of unfair competition entitling Murphy to collect a damages award, the amount of damages has been set by the parties.

The district court erred, however, in fixing the compensatory damages figure at $801,161. The court explicitly noted that its calculations were based on gross, not net, profits. The district court's order reads: "The profits made by Interior Sleep Systems is its gross sales less the cost of goods. We find that the cost of goods is 55% of the sales price." The court then found that the gross sales of the wall beds and cabinets not manufactured or distributed by Murphy that ISS sold as Murphy products amounted to $1,780,357, based on testimony by Murphy's expert. Reduction of that figure by 55% for cost of goods sold yields $801,161, the amount the court awarded as compensation to the Murphy Co.

The parties' stipulation makes no mention of whether net or gross profits was to be used in the calculation of compensatory damages. Absent indication in the stipulation that the parties understood profits to be gross profits, we hold that the district court should have based its assessment of damages on net profits. *See W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 665 (2d Cir.1970) (in determining defendants' profits for purposes of trademark liability, defendant entitled to deduct overhead, operating expenses and income tax from net sales); *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir.1983) (in computing plaintiff's lost profits for copyright infringement award, costs necessary to generate the income should be deducted from sales revenue); *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir.1987). Even if Zarcone does not offer evidence of his costs (as he has not heretofore), the court should estimate them based on the evidence before it.

The award of punitive damages does not violate the parties' stipulation. As the district court found when assessing damages, the parties' stipulation applies only to compensatory damages. Because

**104**

the court found that Zarcone acted knowingly and with reckless disregard of Murphy's rights, it was free to award punitive damages beyond what it awarded as compensatory damages. However, the punitive damages award, premised on violations of Murphy's trademark and unfair competition rights, was not apportioned between the two violations. Because, as we now hold, Zarcone is not guilty of trademark infringement, we are unable to determine what fraction of the punitive damages award, if any, is attributable to unfair competition. Consequently, we remand to the district court to reformulate the award of punitive damages.

### CONCLUSION

We conclude that the defendants adequately demonstrated that the Murphy bed mark is generic, but that they nonetheless committed breaches of their contract with Murphy and engaged in unfair competition. We therefore affirm the district court's entry of a permanent injunction enjoining all defendants from further use of the Murphy name. We affirm also the $6,330 damages award for breach of contract.

We reverse the portion of the court's judgment awarding $801,161 in compensatory damages and remand the case to the district court for recalculation of compensatory damages based on defendants' net profits. We reverse also the court's award of punitive damages because we cannot discern how much of it, if any, is attributable to the trademark infringement cause of action, which, we now hold, fails. Accordingly, we remand for a determination of punitive damages based only on the finding of unfair competition.

Finally, the court should consider on remand whether to subject corporate defendants MBCA Ga. and MBCA Fl. to the damages award of the judgment.