**STAFFORD URGENT CARE, INC., Plaintiff,**

v.

**GARRISONVILLE URGENT CARE, P.C., et al., Defendant.**

**No. CIV.A. 02–1319–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 8, 2002.

Howard Clark Leming, Leming & Healy P.C., Garrisonville, VA, for Plaintiff.

Robert Jay Zelnick, Szabo, Zelnick & Erickson, P.C., Woodbridge, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this trademark infringement dispute, a walk-in medical services provider that identifies itself in its signage as "Urgent Care" sues a competitor for trademark infringement in connection with the competitor's use of the term "Urgent Care" in its signage. At issue on a threshold dismissal motion is whether the term "Urgent Care" is, as a matter of law, generic and hence not protectible.

### I.[1]

Plaintiff, Stafford Urgent Care, Inc. ("Stafford"), is a Virginia corporation that provides walk-in medical services, including general medical care, physical examinations, X-rays, EKGs, and other laboratory tests. It has operated its 1075 Garrisonville Road location since 1997, and its 422 Garrisonville Road location since 1999. Stafford's signage indicates that it holds itself out as "Urgent Care."

Defendants are Garrisonville Urgent Care, P.C. ("Garrisonville"), Baldwinder Singh, and George A. Joseph. Garrisonville is a Virginia corporation that opened on March 20, 2002, approximately 500 yards from one of Stafford's facilities. Garrisonville offers the same medical services as Stafford. Its signage reflects that it also holds itself out as "Urgent Care." Singh and Joseph are the owners and directors of Garrisonville, and were formerly employed by Stafford.

Stafford alleges that Garrisonville's use of "Urgent Care" in such close proximity to Stafford's facility has already created confusion for customers and other entities doing business with Stafford. For example, laboratory reports, supplies and mail intended for Stafford have been misdirected to Garrisonville. Additionally, Stafford alleges that their patients have expressed confusion as to whether Garrisonville and Stafford are affiliated or part of the same parent company. Stafford further alleges that Garrisonville's use of the term "Urgent Care" in its advertising was specifically intended to enhance its ability to compete with Stafford by creating this confusion among patients. Stafford has not registered "Urgent Care" as a trademark.

Stafford's complaint seeks for a temporary and permanent injunction, enjoining defendants from using the term "Urgent Care" in the operation of their business, or provision of services; Stafford also requests for a declaratory judgment that defendants' use of the term "Urgent Care" infringes its trademark or trade name. At issue on defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., is whether the complaint should be dismissed because the term "Urgent Care" is generic as a matter of law and hence undeserving of trademark protection under either the Lanham Act or common law. Also in issue is whether the complaint against the individual defendants must be dismissed because Stafford has not alleged any facts to pierce the corporate veil.

### II.

#### A.

■ To prevail under § 43(a) of the Lanham Act, which protects unregistered

---

1. The facts recited here are derived from the complaint, and are assumed to be true solely for purposes of resolving the motion to dismiss. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217–18 (4th Cir.1994).

trademarks, a plaintiff must show that it has a "valid protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon v. Alpha of Va.*, 43 F.3d 922, 930 (4th Cir.1995). The degree of protection a trademark receives "is directly related to the mark's distinctiveness." *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 464 (4th Cir.1996). Courts have developed the following categories to determine the strength of the mark's distinctiveness; in ascending order of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. Relevant here is the distinction between a generic and a descriptive mark. The significance of this distinction is that while generic marks receive no trademark protection, descriptive marks are protectible only if they have acquired a secondary meaning. *See Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 839 (4th Cir.1990). Simply put, then, the question is whether it is clear as a matter of law at this stage of the litigation that the term "Urgent Care" is generic, in which case, dismissal must follow, or whether it is descriptive and worthy of protection in the event that Stafford succeeds in establishing the requisite secondary meaning.

The leading commentator on trademark law has noted that "some courts have great difficulty in applying the distinction between descriptive and generic terms," as the line between the two is "fuzzy and undefinable." *McCarthy on Trademarks and Unfair Competition*, § 12:20 (4th ed.) ("*McCarthy*"). Nonetheless, the Fourth Circuit has described a mark as descrip-

tive if it "identifies a characteristic or quality of an article or service, [which may include] color, odor, functions, dimensions, or ingredients." *Dayton*, 917 F.2d at 839 (citing 3 L. Altman, *Callman Unfair Competition, Trademarks, and Monopolies*, § 18.03, ch. 18, at 11 (4th ed.1983)). Put differently, a descriptive mark is "descriptive of . . . a desirable characteristic of the goods." *McCarthy*, § 11:16; *see also Educational Development Corp. v. Economy Co.*, 562 F.2d 26, 29 (10th Cir.1977) (holding that a descriptive mark "conveys to [the customer] the most important characteristic of its product."), The Fourth Circuit categorizes a mark as generic if it "denominate[s] a type, kind, genus or subcategory of goods." *Dayton*, 917 F.2d at 839 (citation omitted).[2] A generic mark is simply "the common name of a product or service itself." *Sara Lee Corp.*, 81 F.3d at 464. The distinction between a generic and descriptive term has been summarized by the following questions: while a generic term answers the question for the consumer, "What are you?" a descriptive term answers the question, "Who are you? Where do you come from? Who vouches for you?" Indeed, it is the term's meaning to the general consumer that is the "test of genericness and descriptiveness." *McCarthy*, §§ 12:1, 12:4.

These principles, applied here, do not foreclose the possibility that, for now at least, the term "Urgent Care" is a reasonable candidate for treatment as a descriptive mark because it arguably describes a characteristic and "desirable quality" of the services that a patient would receive at Stafford. *See Dayton*, 917 F.2d at 839;

**2.** As the court explained in *Washington Speakers*, the term "Speakers Bureau" would be a generic term, incapable of being protected, because it "merely indicates the general nature of services a lecture agency provides." *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.Supp.2d 488, 495–96.

By contrast, the term "Washington Speakers Bureau" would be a descriptive mark because the term "Washington" describes the geographic nature of the business, and therefore describes the "characteristics and qualities of the service" that the business provides. *Id.*

*McCarthy*, § 11:16. The goal of Stafford Urgent Care's use of the term "Urgent Care" is to convey to its potential patients the message that its medical facility would provide "urgent," *i.e.* emergency, "care," *i.e.* services that will alleviate the patients' medical needs. This message encompasses the "most important characteristic" of Stafford Urgent Care's business. *See Educational Development Corp.*, 562 F.2d at 29. For the consumer of walk-in medical services, the term "Urgent Care" answers the question "Who are you?" By contrast, the answer to the consumer's question "What are you?" would be "walk-in medical services." Accordingly, the term "Urgent Care" merits the descriptive label.

■ Importantly, however, this categorization only begins, but does not end the analysis as to trademark protection. The determinative question for trademark protection is whether the term "Urgent Care" has required a secondary meaning. The Fourth Circuit has defined "secondary meaning" as "the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990); *see also Sara Lee*, 81 F.3d at 464 (holding that a mark acquires a secondary meaning when the primary significance of the mark is that it identifies "the source of the product rather than the product itself"). The question of secondary meaning is a fact-based analysis, in which the following factors are relevant: (*l*) advertising expenditures, (ii) consumer studies, (iii) sales success, (iv) attempts by others to plagiarize the mark, (v) length and exclusivity of the mark's use, and (vi) evidence of actual confusion on the part of consumers. *See Heirs of the Estate of Jenkins v. Paramount Pictures Corp.*, 90 F.Supp.2d 706, 713 (E.D.Va.2000) (citations omitted). Because this factual inqui-ry is not appropriately decided on a threshold dismissal motion, defendants' motion to dismiss for failure to state a claim must be denied. *See Little Tavern Shops v. Davis*, 116 F.2d 903, 906 (4th Cir.1941); *McCarthy*, § 15:29. It is appropriate to note, however, that defendants may succeed in adducing evidence at the summary judgment stage that the term "Urgent Care" has lost its descriptive quality, through common usage and lack of secondary meaning, and in fact, has become a generic term. *See, e.g., Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 100–102 (2nd Cir.1989) (holding that the term "Murphy Bed" was generic because the public adopted the term through common use to describe a bed that folds into a closet).

**B.**

■ It is well-established that, in general, an individual ·corporate officer or director is not subject to personal liability simply by virtue of his office; such liability attaches only if the corporate veil can be pierced which appropriately occurs only in certain extraordinary circumstances. *See Tillman v. Wheaton–Haven Recreation Association, Inc.*, 517 F.2d 1141, 1144 (4th Cir.1975); *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828, 831 (1987) (holding that a refusal to recognize the corporate immunity for directors and officers constitutes an "extraordinary exception"). It is not alleged that such extraordinary circumstances exist here with respect to the individual defendants. Yet, this does not end the analysis of these individual defendants' liability as it is equally well-established that an individual corporate officer or director can be held personally liable for trademark infringement. *See Polo Fashions v. Craftex*, 816 F.2d 145, 149 (4th Cir.1987); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606

(3rd Cir.1978); *Committee for Idaho's High Desert v. Yost,* 92 F.3d 814, 823–24 (9th Cir.1996), citing *Polo Fashions,* 816 F.2d at 149; *McCarthy,* § 25:24; *see generally Tillman,* 517 F.2d at 1144 (holding that a director who votes for the commission of a tort is personally liable, while a director who did not personally participate in the commission of the tort could not be held personally liable). Particularly instructive is the Third Circuit's opinion in *Donsco,* where an officer who was a "central figure" in the corporation was found personally liable for acts of trademark infringement that he had "authorized and approved." *Donsco,* 587 F.2d at 606. The Third Circuit panel found persuasive the officer's active and actual participation in the infringement, explaining that a corporate officer is "individually liable for the torts he personally commits, and cannot shield himself behind a corporation when he is an actual participant of the tort." *Id.* In sum, it is clear that in such circumstances, the fact that an officer was an agent of the corporation, acting for its benefit, will not shield that officer from tort liability, but instead may only make the corporation secondarily liable. *Id.*

As the Third Circuit panel further explained, an officer's personal tort liability as a participant in a tort is sharply distinguishable from any liability resulting from the piercing of the corporate veil; piercing the veil occurs where the corporation is a sham entity abused or used by the owner to commit wrongs whereas the defendants' tort liability is predicated here on their alleged participation, *viz,* authorization and approval of a tort.

In sum, given the allegations in the complaint, the individual defendants are proper parties in this case. Stafford has alleged that Singh and Joseph incorporated the Garrisonville entity, using the "Urgent Care" term in its signage, with the intent and purpose of diverting patients and business from Stafford's facility. If "Urgent Care" is found to have a secondary meaning, then the question of whether Singh and Joseph had sufficient participation in Garrisonville's infringement of Stafford's trademark is a question of fact. Accordingly, the defendants' motion to dismiss Singh and Joseph from the case must be denied.

### III.

In summary, defendants' motion to dismiss plaintiff's Lanham Act claim must be denied, and defendants' motion to dismiss the individual defendants, Singh and Joseph, must also be denied.

An appropriate order has issued.